# STANDARD FIREPROOFING COMPANY v. ST. LOUIS EXPANDED METAL FIREPROOFING COMPANY, Appellant.

### Division Two, November 17, 1903.

1. **Written Contract:** PAROL PRIOR AGREEMENT: PART PERFORMANCE. Where there was a written contract complete on its face, to pay one cent royalty per square foot for all floor tiling constructed according to a certain patent, the subject-matter being within the statute of frauds, parol evidence of a prior oral agreement that the price to be paid was not to exceed that charged to other licensees, is inadmissible. Nor does part performance of such oral agreement by the owner of the patent in any manner affect the written contract.

2. **Accounting:** EXTENT OF FINDING. In a suit for an accounting for royalties due plaintiff for the use by defendant, under a specific contract, of its patent process for constructing a floor tiling, the finding should not be limited to the amount due when the suit was brought, but should include all sums due up to the time of the hearing.

3. **Contract to Use Patent Process:** BREACH: DAMAGES. Defendant in consideration of an exclusive right given it by written contract, to use and vend a certain patent process for constructing floor tiling during the life of the letters-patent in certain named States, covenanted that it would not use or sell any "similar" construction for the purpose of evading the contract. *Held*, that this contract was not in restraint of trade, and for a breach thereof defendant was liable for damages.

4. ————: MEASURE OF DAMAGES. In such case, the written contract itself, by which defendant agreed to pay one cent per square foot of all flooring constructed according to such patent process, furnishes the measure of damages, which is the one cent per square foot which defendant stipulated it would pay, and which plaintiff would have received had defendant not voluntarily substituted another process when the owners of the building were willing that this process should be used.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*Carr & Carr* for appellant.

(1) The second defense to the first cause of action states a complete contract fully performed on one side. Thus it is taken out of the statute of frauds. Dozier v. Watson, 94 Mo. 328. The oral contract set up by defendant was not within the statute of frauds because it might have been performed within a year. It was not within the statute of frauds because the giving of a lower rate of royalty to another licensee is a definite act which determined the obligation of the parol promise and said act does not continue during the full term of the contract. (2) The recovery is limited to buildings which were erected prior to the date of filing the petition; any subsequent breach of the contract must be specially pleaded. Van Hoozier v. Railroad, 70 Mo. 145; Benson v. Railroad, 78 Mo. 504; Brown v. Railroad, 80 Mo. 457. (3) The second count is demurrable because it does not allege that the Golding system was available for use where other systems are alleged to have been used; consequently, there could have been no damage. Woodworth v. McLean, 97 Mo. 325; Albers v. Merchants' Exchange, 138 Mo. 166. (4) (a) Upon the face of the second count, the Johnson system is not within the contract; and this is a question of interpretation for the court and not of fact for the referee. Fruin v. Railroad, 89 Mo. 397; Railroad v. Rowley, 155 U. S. 625; Fond du Lac Co. v. May, 137 U. S. 395; Heald v. Rice, 104 U. S. 737; Powder Co. v. Powder Works, 98 U. S. 126. (b) And for the purposes of such interpretation, the court will take judicial notice of numerous facts concerning fireproof floorings. Richards v. Chase Elevator Co., 158 U. S. 299; Heaton Co. v. Schlochtmeyer, 69 Fed. 592; N. Y. Belting Co. v. N. J., etc., Co., 137 U. S. 445; King v. Gallun, 109 U. S. 99; Terhune v. Phillips, 9 Otto 592; Root v. Sontag, 47 Fed. 309; Wall v. Leck, 61 Fed. 291; Buckingham v. Iron Co., 51 Fed. 236. While the point probably has not arisen in the

same form in the decisions of this court, the doctrine is found in the following cases: Goode v. McPherson, 51 Mo. 126; State v. Hayes, 78 Mo. 307; Globe Printing Co. v. Stahl, 23 Mo. App. 451. (5) The contract is void because the prohibition against defendant's using other systems is not limited either as to time or space. Wiggins Ferry Co. v. Railroad, 128 Mo. 244-245; Peltz v. Eichele, 62 Mo. 171; Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Long v. Towl, 42 Mo. 545; Gill v. Ferris, 82 Mo. 156. (6) The rules governing the construction of the contract may be stated as follows: First, the issue of the Johnson patent raises a presumption that the Johnson system is not similar to the Golding system. Corning v. Burden, 15 How. 252; Blanchard v. Puttnam, 3 Fish. 186; Goodyear Dental Vulcanite Co. v. Gardner, 4 Fish. 224; Westlake v. Carter, 6 Fish. 519; Bank v. Imhaeuser, 2 Bann. & Ard. 465; Sargent Mfg. Co. v. Woodruff, 5 Biss. 444. Second. The word ''similar'' must be restricted to such systems as actually compete with the Golding system. Richardson v. Railroad, 149 Mo. 311. Otherwise the restraint would be unreasonable and void for the following reasons: (a) Because such restraint would be far greater than any protection of plaintiff would require. Long v. Towl, supra. (b) Because it would forfeit by implication defendant's right to use other systems in common with the public. (c) Because it would be contrary to public policy to prevent defendant adopting improvements. Wiggins Ferry Co. v. Railroad, supra. (d) Because it would work an unconscionable hardship on defendant by requiring it to abandon all business except an occasional contract for fireproofing a building. Richardson v. Railroad, supra. Third. The general words ''for any purpose whatever'' following the specific words must be limited to the same class therewith. Schulenberg v. Maguire, 42 Mo. 391; Grumley v. Webb, 44 Mo. 456; St. Louis v.

Vol 177 mo—36

Laughlin, 49 Mo. 559; Hubbard v. Burton, 75 Mo. 65; Johnson Co. v. Wood, 84 Mo. 489; St. Joseph v. Porter, 29 Mo. App. 605. Fourth. As for the "good faith" clause purporting to regulate the manner of building the Golding construction, it must be construed: (a) So as not to render other clauses surplusage. Standard Sewing Machine Co. v. Leslie, 78 Fed. 330. (b) So as to be consistent with other clauses. McCullock v. Holmes, 111 Mo. 445. Fifth. The practical interpretation adopted and followed by the parties will be adopted by the court. Patterson v. Camden, 25 Mo. 22; St. Louis Gaslight Co. v. St. Louis, 46 Mo. 129; Jones v. DeLassus, 84 Mo. 545; Scott v. Scott, 95 Mo. 318; Union Depot Co. v. Railroad, 131 Mo. 305; Thorn Wire Co. v. Washburn & Moen Co., 159 U. S. 423; District of Columbia v. Gallaher, 124 U. S. 505; Fox Solid Pressed Steel Co. v. Schoen Mfg. Co., 84 Fed. 545. Sixth. Where a contract is fairly open to two constructions, the one making it legal and the other making it illegal, the one making it legal should be adopted. Lamar Water Co. v. City of Lamar, 128 Mo. 188; Wiggins Ferry Co. v. Railroad, supra. (7) The general principle of damages is that the one suffering from a breach of contract should be compensated for actual loss, and such damage must be actually proved. Albers v. Merchants' Exchange, 138 Mo. 159; Hammond v. Beeson, 112 Mo. 197; Cincinnati Gas Co. v. Western Siemens Co., 152 U. S. 200. (a) Damages are not recoverable where the evidence shows that there would have been no advantage to plaintiff if the contract had been performed; that is, if the defendant had not used the Johnson system. Louisville Canal Co. v. Rowan, 4 Dana 606; Woodworth v. McLean, 97 Mo. 325; Cooke v. Barr, 39 Conn. 296. (b) In order for plaintiff to recover damages it is necessary for it to show that the defendant would have used the Golding system if it had not used the Johnson system. Express Co. v. Egbert, 36 Pa. 350; Tel. Co. v. Hall, 124 U. S. 444; Tel. Co. v. Crall,

39 Kas. 580; Mizner v. Frazier, 40 Mich. 592. (c) Comparative cost and other economical considerations are material facts; and there is no presumption that the patented system would have been used if the Johnson system had not been used. Dobson v. Dornan, 118 U. S. 18; Seymour v. McCormick, 16 How. 487; Cincinnati Gas Co. v. Western Siemens Co., 152 U. S. 206; Wiggins Ferry Co. v. Railroad, supra. (d) The royalty specified in the contract is not the proper measure of damages for a breach of stipulation not to use a system different from the patent system. The damages are the same for breach of contract of royalty as for infringement of patent. Boswell v. Dahlman, 68 Mo. 591; Cincinnati Gas Co. v. Western Siemens Co., supra. (e) Special damages must be specially pleaded and proved; and loss of royalty is not the direct result of a use of a different system, but at best only a special damage requiring the allegation of facts showing that a royalty would have accrued, except for the breach of contract. Steffin v. Railroad, 156 Mo. 322; Brown v. Railroad, 99 Mo. 310; State to use v. Blackman, 51 Mo. 320; O'Leary v. Rowan, 31 Mo. 119.

*Charles B. Stark* for respondent.

(1) The ruling excluding evidence of the oral agreement was correct: (a) Parol evidence of contemporaneous or antecedent agreements is not admissible to change or vary a written contract, because the law conclusively presumes that all prior and contemporaneous negotiations and agreements were merged in the writing. Warren v. Mayer Mfg. Co., 161 Mo. 120; Tracy v. Iron Works, 104 Mo. 193; Boyd v. Paul, 125 Mo. 9; Rucker v. Harrington, 52 Mo. App. 481; Ringer v. Holtzclaw, 112 Mo. 523; Rollins v. Claybrook, 22 Mo. 406; Morgan v. Porter, 103 Mo. 135; Broughton v. Null, 56 Mo. App. 231; 1 Greenleaf Ev., sec. 87. (b) The rule which allows parol evidence to be adduced in aid

of a written agreement applies only where the written agreement shows on its face that it is not a complete expression of the entire contract. Rollins v. Claybrook, 22 Mo. 405; Moss v. Green, 41 Mo. 389; Boyd v. Paul, 125 Mo. 9; Broughton v. Null, 56 Mo. App. 231; Norton v. Bohart, 105 Mo. 615. (c) The rule that where a written contract shows on its face that it is incomplete the omitted parts may be supplied by parol evidence, does not apply to contracts which the statute of frauds requires to be in writing. Warren v. Mayer Mfg. Co., 161 Mo. 121; Boyd v. Paul, 125 Mo. 9; Miller v. Goodrich, 53 Mo. App. 430; Ringer v. Holtzclaw, 112 Mo. 519; Carrick v. Mincke, 60 Mo. App. 140; Musselman v. Stover, 31 Pa. St. 265; Glass v. Hulbert, 102 Mass, 24; Moulding v. Prussing, 70 Ill. 151; Osborn v. Phelps, 19 Conn. 63; 1 Greenleaf Ev., sec. 86. (d) Part performance of a contract will not take it out of the statute so as to cause a variation of the above rules. Sharp v. Rhiel, 55 Mo. 97; Atwood v. Fox, 30 Mo. 500; Nally v. Reading, 107 Mo. 350. (e) The contract in suit by its terms was to continue "during the life of letters-patent" thereafter to be taken out "with any extensions or reissues of" the same. This is a contract "not to be performed within one year from the making thereof" within the purview of the statute of frauds. U. S. R. S. sec. 4884; R. S. 1899, sec. 3418; Atwood v. Fox, 30 Mo. 499; Sharp v. Rhiel, 55 Mo. 97; Nally v. Reading, 107 Mo. 355; Briar v. Robertson, 19 Mo. App. 66; Miller v. Goodrich, 53 Mo. App. 430. (f) The parol contract attempted to be set up is inadmissible as a defense for want of consideration. (2) It is proper practice for the referee to include in the account stated by him all items accruing prior to the time of stating the account. Rubber Co. v. Goodyear, 76 U. S. (9 Wall.) 800; 2 Dan. Chan. Pl. & Pr. (5 Ed.), p. 1170; Condit v. Maxwell, 142 Mo. 281; Bulstrode v. Bradley, 3 Atk. 582; Holabird v. Burr, 17 Conn. 563; Smith v. Brush, 11 Conn. 365; Robinson v. Bland, 2 Burr. 1086; Adams v. Brown, 7

Cush. 223; Mann v. Richardson, .21 Pick. 355; Stewart v. Clark, 11 Met. 384. (3) The floor construction used in the Century building is similar to the plaintiff's. (a) The same rules are applied in construing a license contract as in construing any other written instrument. Walker Pat. (3 Ed.), sec. 306; Wetherell v. Zinc Co., 6 Fish. 50. (b) Persons are presumed to employ words in their usual sense and not otherwise unless there is something indicating a contrary intention. Goode v. St. Louis, 113 Mo. 257; Wiggins Ferry Co. v. Railroad, 73 Mo. 407. (c) The word "similar" means resembling; having resemblance; somewhat alike; nearly corresponding; resembling closely. Webster's Dictionary; Worcester's Dictionary; Century Dictionary; Greenleaf v. Goodrich, 1 Hask. 586; R. I. Hospital Trust Co. v. Olney, 16 R. I. 184; Wilder v. Adams, 16 Gray 482; Weld v. May, 9 Cush. 191; Ainsworth v. Bentley, 14 Weekly Rep. 630, cited 103 Mass. 76; Porter v. Standard Measuring Machine Co., 142 Mass. 195. (d) It does not mean identity, for "a thing can not, strictly speaking, be similar to itself, for similarity is not identity but resemblance between different things." R. I. Hospital Trust Co. v. Olney, supra. (e) The words "similar description" are to be understood in their popular and generally-received meaning; goods similar in product and adapted to similar uses are not necessarily produced by similar processes or methods of manufacture. Greenleaf v. Goodrich, supra. (f) On the question of similarity, the construction is fairly, if not irresistibly with the plaintiff under the cases cited above and especially under the authority of the following among them: Billings v. Ames, 32 Mo. 265; Greenleaf v. Goodrich, 1 Hask. 586; Wilder v. Adams, 16 Gray. 478; Porter v. Standard Measuring Machine Co., 142 Mass. 195; Ainsworth v. Bentley, 14 Weekly Rep. 630. (4) The plaintiff should be put in the position it would have been in if the contract to install the licensed system in the Century building had been executed: (a) The con-

tract itself should furnish the basis for estimating the damages if they can be ascertained thereunder with sufficient certainty.    Hammond v. Beeson, 112 Mo. 197. (b) The royalties which the "plaintiff expected to realize out of the contract were the real consideration that induced [it] to make it  .  .  .  and to these [it] ought to be entitled."    Hammond v. Beeson, 112 Mo. 198; Wiggins Ferry Co. v. Railroad, 73 Mo. 389. (c) The proper rule to be followed for the admeasurement of damages in the cause of action set up in the second count is laid down in Porter v. Standard Measuring Machine Co., 142 Mass. 191; Wilder v. Adams, 16 Gray 478. (5) The covenant sued on in this case, is not void as contravening the rule that makes invalid covenants in general restraint of trade :    (a) Patented inventions and secrets of art or trade not patented are not within the purview of the rule against restraint of trade.    Hulse v. Bonsack Machine Co., 65 Fed. 869; Ammunition Co. v. Nordenfelt, 1 Chan. 630; Morse v. Morse, 103 Mass. 73; Vickery v. Welch, 19 Pick. 527; Mackinnon Pen Co. v. Fountain Ink Co., 48 N. Y. 447; 1 Story Contr. (5 Ed.), sec. 686; Alcock v. Giberton, 5 Duer. 76; Bryson v. Whitehead, 1 Sim. & Stu. 74; Jarvis v. Peck, 10 Paige Ch. 123; Jones v. Lees, 1 H. & N. 193; Billings v. Ames, 32 Mo. 265. (b) The test of the reasonableness of any restriction is whether it is such as only affords a fair protection to the party in whose favor it is made and at the same time does not militate against the public interest.    Mackinnon Pen Co. v. Fountain Ink Co., supra; 1 Story Cont. (5 Ed.), sec. 681; Jarvis v. Peck, supra; Presbury v. Fisher, supra; Billings v. Ames, supra; Long v. Towl, 42 Mo. 545; Pelts v. Eichele, 63 Mo. 171; Wiggins Ferry Co. v. Railroad, supra; Skrainka v. Scharrenhausen, 8 Mo. App. 522; Gamewell Fire Alarm Telegraph Co. v. Crane, 160 Mass. 50; Morse Twist Drill Machine Co. v. Morse, 103 Mass. 73.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of the city of St. Louis in favor of the plaintiff for $5,217.71 for breaches of a contract entered into by and between plaintiff and defendant on the 17th of February, 1894, in which plaintiff, in consideration of the royalties to be paid by the defendant to plaintiff, as in said contract specified, granted to defendant the sole and exclusive right to make, use and vend a fireproof floor construction, under and according to and embodied in the invention described and claimed in the application for certain letters-patent of the United States of America, filed July 3, 1893, by one John F. Golding, being serial number 479435 and allowed October 16, 1893, for improvements in fireproof flooring, and the exclusive right thereunder to practice said invention in, for and throughout the States of Missouri, Arkansas, Kansas, Colorado and Texas and New Mexico, Indian and Oklahoma territories, during the life of said letters-patent and any extensions or reissue thereof and improvements which plaintiff might acquire either as patentee, assignee or purchaser. The royalty to be paid was one cent on each square foot of construction. The defendant on its part covenanted to render an account monthly to the plaintiff of the amount of square feet constructed during the previous month. Among other stipulations was the following: "The party of the second part during the existence of this contract, shall not use or sell or cause to be used or sold *any construction similar* to that of said party of the first part, which is hereby granted, for the purpose of evading this contract, or to be used instead of that made under this contract, or for any purpose whatever, but the party of the second part shall in good faith construct with the utmost diligence such construction according to the letters-patent hereinbefore mentioned or improvements on the same."

The invention, the right to make, use and vend which was granted to defendant by the said contract,

was briefly, "A new and improved construction of fireproof floors and ceilings which may be used as substitutes for the hollow tiling and solid concrete filled structures supported between iron girders now generally used, and it also relates to the art of building the same."

It was alleged in the application for the patent, "The structure produced by my invention is lighter and stronger than the old construction."

There were two counts in the petition. The first was for royalties due on work done by defendant confessedly according to the Golding patent, and for an accounting by defendant pursuant to the terms of the contract. The second count is an action at law for damages, alleged to have been suffered by plaintiff by reason of defendant's violation of its covenant not to use or sell or cause to be used or sold any *construction similar* to that of the plaintiff for the purpose of evading the contract or to be used instead of that made under the contract, or for any purpose whatever, but that it would in good faith construct with the utmost diligence the licensed invention according to the plaintiff's letters-patent or any improvements thereon.

There was a third count, but as it was voluntarily dismissed it need not be noticed.

In its answer to the first count, defendant admitted the execution of the contract and the building of flooring under the patent of an amount exceeding 40,000 square feet, and pleaded payment of $400. It averred that, at the time of the negotiations resulting in the execution of the license pleaded in the petition and prior to the execution thereof, the plaintiff represented to the defendant that its lowest license fee or royalty was one cent per square foot, and that the plaintiff expressly promised to the defendant that, if the defendant would execute the license contract sued on, the rate of royalty payable by the defendant should never exceed the lowest royalty payable by others during the same period, but that, if any other person should be given a license at a

lower royalty than one cent per square foot, the royalty payable by the defendant should be the same as that of the licensee paying at the lowest rate. It alleged that this promise was made orally just prior to the execution of the license contract sued on, and that in consideration of said promise the defendant executed the contract. It then stated that the defendant granted licenses for a lower royalty than one cent, and that, if it were charged at the lower rate, it would owe the plaintiff nothing after applying the $400.

In answer to the second cause of action the defendant admitted the plaintiff's ownership of the patent issued to it for the Golding invention, and that the drawings and specifications of the Golding and Johnson systems are correctly set out in the petition, and that it had built fireproof floor construction in accordance with the Johnson system as shown in the petition, and denied all the other allegations of the said second count.

The reply was a denial of the new matter.

After the issues were made up, the plaintiff by leave amended its petition so as to include royalties down to the hearing before the referee, to which defendant excepted.

The case was referred and the referee reported in favor of a judgment for plaintiff on first count of $2,607.21, being the amount of royalties earned, less $400 paid plaintiff thereon, and interest on the balance at six per cent, and on the second count $2,610.50, or a total of $5,217.71.

Defendant appeals.

The evidence as to the construction on which plaintiff bases its claim for recovery is substantially uncontradicted. Indeed, the estimates of royalties is based upon a report the defendant made to the referee. Prior to the institution of this suit defendant had constructed, according to the Golding system, 137,606 square feet, and during the pendency of the suit, but prior to the stating of the account by the referee, it had completed

other work amounting to 149,715 square feet, or a total of 287,321 square feet. It had never made a report monthly or otherwise as required by the contract until required to do so by the referee. Prior to the filing of the suit, however, it had paid plaintiff $400, and was entitled to and received credit therefor in the finding of the referee.

During the period from the making of this contract down to the report of the referee, defendant constructed many thousand feet of fireproof flooring according to other systems than the Golding, among other the Johnson system. Plaintiff insisted it was entitled to damages for the breach of its contract on all this work, on the theory that it was *similar* construction to that provided for in the Golding system. Plaintiff's contention was that it was the intention of the parties to the license contract to give defendant the exclusive right to practice the Golding invention in the licensed territory and to deprive it of the right to use any system patented or unpatented in competition with the Golding system, and that as between these parties every system must be considered *similar* to the Golding system that could be used in competition with it.

The referee found against the plaintiff on all the work done by defendant according to other systems other than the work done in or on the Century building and the Linz building in the city of St. Louis.

The circuit court sustained the exception of defendant to this finding as to the Linz building, thereby eliminating $51 of the amount found by the referee, and then confirmed the report. The work on the Century building amounted to 230,000 square feet, or $2,300 in royalties.

The plaintiff did not appeal and as already said, the case is before us on defendant's appeal only. Other facts will be noted in the discussion of the errors assigned by defendant.

I.  It appears that on the hearing before the referee the defendant offered to prove the allegation in its answer, that notwithstanding the contract fixed the royalty at one cent per square foot, plaintiff made a parol promise that the rate of royalty should be reduced to the lowest rate of royalty paid by any other licensee of said patent to defendant and that plaintiff allowed other licensees a rate considerably lower than that stipulated in the contract and that the royalties calculated on such lower rate amounted to less than the sums already paid to plaintiff by defendant.

It is alleged in the answer that the alleged parol agreement that the rate of royalty or license fee payable by defendant should never exceed the lowest royalty payable by other licensees of plaintiff, "was made *prior* to the execution" of the contract sued on. The referee excluded evidence of said prior parol agreement.

That the referee correctly held such evidence inadmissible to vary the written contract does not admit of serious doubt.

At common law parol evidence of prior and contemporaneous agreements was not permitted to change the written contract, because the law conclusively presumed that all prior and contemporaneous negotiations were merged in the writing and that it contained the entire agreement. An exception to this rule was that if the contract was incompetent on its face, oral testimony was admissible to supply the defects and the presumption that all the agreement was in the writing being negatived on its face, no principle of law was violated in admiting the parol evidence. But under the statute of frauds if the subject-matter of the contract is within the statute and the contract or memorandum is deficient in some one or more of the essentials required by the statute, parol evidence can not be received to supply the defects, for this were to do the very thing prohibited by the statute. [Ringer v. Holtzclaw, 112 Mo. loc. cit.

523; Boyd v. Paul, 125 Mo. 9; Warren v. Mayer Mfg. Co., 161 Mo. 112.]

In this case the written contract was complete on its face, and it was clearly not allowable to permit defendant to contradict its plain terms by proof of a parol agreement made prior to its execution.

Neither does part performance in any manner affect the contract.

II.   Exception was taken to the action of the referee and the court, in permitting evidence as to royalties due plaintiff on work done and completed by defendant according to the Golding system after the time of the commencement of this suit, and down to the conclusion of the hearing before the referee.

A correct conclusion can only be reached in the consideration of this assignment by keeping in mind the nature of the suit.   The first count is a bill in equity for an accounting of the royalties due by defendant to plaintiff on the contract.   The contract is admitted and the question is, did the referee and circuit court err in stating the account down to the hearing?   The suit was for an accounting.   In Rubber Company v. Goodyear, 76 U. S. 788, the Supreme Court of the United States held that in taking an account for the infringement of a patent, the master was not limited to the date of entering the decree, but could extend it down to the time of hearing before him.

In Massachusetts, on a bill in equity to redeem, the account of the mortgagee is to be made up of the amount due at the time of the decree for redemption, not the amount due him when the bill was filed. [Adams v. Brown, 7 Cush. 223; Mann v. Richardson, 21 Pick. 355.]

In Holabird v. Burr, 17 Conn. 556, the court said:

"It is said that Holabird is charged, down to the time of the report, with rents and profits, whereas he should have been charged only to the date of the bill. This objection, if sustained, would probably have made

all others of no importance; for as the defendant entered into possession on the 6th of April, and the bill was brought July 21st, there must have been little or nothing to account for. At first, it may seem singular, that the plaintiffs should call upon the defendant to account for what he had not received, when the call was made. But the object of all suits is to do justice between the parties. If we could administer justice as they do in some despotic countries, where a complaint, a trial and judgment, are but the work of a day, there could be no difficulty. But here, where the trial may be years after a suit is commenced, it seems important that the result should be, as far as possible, the termination of the cause of complaint. Therefore where an assault and battery has been committed, we allow evidence of the condition of the injured person down to the time of trial; and in an action on a note, we allow interest to the day of the judgment. A technical difficulty was started in Johnson v. Bland, 2 Burr. 1086, but Lord MANSFIELD, with his liberal views of justice, easily overcame it; and it is remarkable that the very case by which he illustrates his argument there, is that of the action of account, in which, he says, all articles, though incurred since the writ, shall be included, and the whole brought down to the time the auditors make an end of their account. Surely, a court of equity will go as far to carry out principles of justice, and stop litigation, as a court of law.''

Plaintiff in its petition does not limit its claim to the amount due when it was filed, but in its terms it is prospective, and as no possible harm can come to defendants if required to account by extending the account up to the hearing before the referee or master, but on the contrary save him the costs of a new suit, and as he is fully notified that an accounting is the purpose of the suit, we think the account was properly taken down to the hearing before the referee. Such a course is in harmony with analogous cases at law mentioned by the

Supreme Court of Connecticut and the usual practice in our courts.

The contract admitted, and parol evidence to vary it excluded, nothing remained to be ascertained but the amount of construction completed by defendant on the Golding system, in regard to the first count of the petition.

The finding of the referee is based on defendant's own statement, which was not seriously controverted by plaintiff. The only possible objection to the finding on this count is the one last noted, to-wit, that the statement includes all the construction done by defendant under the Golding system down to the statement of the account by the referee. We think the very nature of a bill for accounting requires in justice to both parties that their mutual rights should be adjusted up to the time of the final accounting in that suit without subjecting either party or both to the wholly unnecessary cost of a new suit, which must necessarily be decided upon the principles adopted in such suit, and accordingly no error was committed in charging defendant with the royalties down to the judgment in the circuit court.

III.   Coming now to the action for damages in the second count. The referee found against the plaintiff on all the items of construction which defendant returned as done under other systems, except the Century building roofing. The defendant excepted to this and the action of the court in approving this finding presents the main contention in this case. The defendant assails this on various grounds. First, that the contract is against public policy as in restraint of trade.

The plaintiff under its letters-patent had a monopoly of the Golding system during the life of its patent under the law of the land.

The defendant desired and contracted for the use of that system as licensee within a territory less than the United States.

Having the exclusive right to make, use and vend
this system it would clearly have been unprofitable for
the plaintiff to have sold the exclusive right to defend-
ant within the limited territory and thus tied its hands
so that it could not have derived any benefit from it
from any other source, and at the same time have left
it optional with its licensee to use competing and rival
systems.    It was therefore necessary for its own pro-
tection for plaintiff to require defendant to covenant
not to depreciate its patent and to abstain from using a
rival system for the purpose of evading the contract
or to be used instead of the system made under the con-
tract.    The territory covered by the restraint is cotermi-
nous with the exclusive license granted to defendant and
so is the period of restraint.

It will be observed that the contract does not de-
prive defendant of the right to follow any calling or to
carry on any kind of business.    It only binds defendant
not to use, in the limited territory, any system of fire-
proof flooring *similar* to the Golding system, so as to
evade the contract with plaintiff, but to use good faith
and diligence in securing its introduction.    The referee
and the court both gave the contract a restricted con-
struction.    They rejected the interpretation which
plaintiff sought to put on the contract, that it bound de-
fendant to use the Golding system in every case where
the arrangement of the I beams constituting the frame
of the building renders it, in a structural sense, possible
to use said system, exclusive of all considerations of
cost and every consideration that might induce the engi-
neer or architect to award the preference to some other
system and thus preclude defendant from bidding on the
work according to another system when it would be evi-
dent that by abstaining from so doing it could not possi-
bly introduce the Golding system and by so doing it
would in no way injure plaintiff.    On the other hand,
the referee rejected the contention of defendant that
"similar construction" meant only those forms of fire-

proof construction that were identical with the Golding system in the sense of the rules governing similarity in the law of patents.

He also refused to adopt the secondary theory of defendant that wheresoever it could adopt another system in clear commercial advantage to itself, it could do so without a breach of its contract.

The referee reached the conclusion that "a proper construction of the words 'similar construction' comprehended every system of fireproof construction which, like the Golding system, may be used as a substitute for the hollow tile and solid concrete filled structures supported between iron girders, and generally in use at the date of the Golding patent." That the defendant might have obtained another substitute for the hollow tile and solid concrete system seems to have been fairly established, but it saw fit to enter into a contract with plaintiff to adopt and use the Golding system. In view, then, of the exclusive patent right of plaintiff, the restricted territory and time, and the still further restricted construction of the contract, which after much consideration we believe is a fair and correct interpretation thereof, and in view of all the surrounding circumstances, we think the contract was not void as in restraint of trade.

This is not a suit for the infringement of the patent, but on contract in which the patent is brought in collaterally. Patented inventions and secrets of art or trade not patentable are not within the purview of the rule against restraint of trade.

Baron BRAMWELL in Jones v. Lees, 1 H. & N. 189, said:

"The plaintiff is the owner of a patent for a term of fourteen years, and he assigns his interest in it to the defendant, who covenants that he will not, during the term, make or sell any stubbing machines without that invention applied to them. How can we say that such a contract is unreasonable? It is objected that the re-

straint extends to all England; but so does the privilege. The cases with respect to the sale of a good will do not apply, because the trade, which is the subject-matter of the sale, is local, and therefore a prohibition against carrying it on beyond that locality would be useless; here, however, there is no limit to the place within which the license is to be exercised.''

In Billings v. Ames, 32 Mo. 265, a covenant "to put up no more cemented hams of any kind without your consent during the existence of your patent,'' was held not invalid as against public policy or restraint of trade, this court saying, "It does not prohibit the defendants from engaging in the pork-packing business, nor in putting up and selling hams, but simply restrains them for a limited time in the use of a cement for covering hams, especially one used by plaintiff, and only useful in covering hams destined for a distant market. It is not in any sense a contract prohibiting the pursuit of an occupation, or the carrying on of a particular business; nor does the restraint in anywise affect the public at large; nor is it, in view of the circumstances of the case, unjust or unreasonable.'' [Morse, etc., Co. v. Morse, 103 Mass. 73; Horner v. Graves, 7 Bing. 735; Match Co. v. Roeber, 106 N. Y. 473; Hulse v. Bonsack Mach. Co., 65 Fed. 868; Maxim Nordenfelt Gun Co. v. Nordenfelt, L. R. (1893) 1 Chy. 630.]

It is obvious that defendant considered the Golding patent an improvement in the construction of fireproof flooring when it entered into the contract, and as said by C. B. Pollock in Jones v. Lees, 1 H. & N. 193, it will not do to hold ''that a contract, which it may be presumed was reasonable at the time it was entered into, might be construed as a contract in restraint of trade because something more useful than the subject-matter of it has been invented, or the habits of society have changed.''

This in fact seems to be the contention of defend-

ant, because it deems the Johnson system a better system than the Golding system. "If there is one thing more than another that public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by courts of justice." [Registering Co. v. Sampson, L. R. 19 Eq. 465.]

Being of the opinion, then, that the contract was not against public policy, was the conduct of defendant in substituting the Johnson system on the Century building in lieu of the Golding system a breach of its contract with plaintiff?

The time and space allotted to an opinion in this case will not admit of our following the defendant in its discussion of all the intricacies of patent law, and what similarity between these two systems would or would not amount to an infringement of plaintiff's patent. This is not a suit for infringement. Let it be conceded that the Johnson system would not amount to an infringment, so much the greater need for an agreement which would protect plaintiff against losses which were not covered by its patent.

For an infringement the law affords him ample redress, but his contract stipulated against the use of a similar invention by defendant which, though not infringing his patent, would work the damage of which it complains. The contract provided it should not use any construction similar to the Golding system for the purpose of evading the contract. The contract exacted good faith and diligent effort to further the Golding system, and the evidence establishes beyond controversy that the owners of the Century building, not only were willing to, but, did contract with it to build the Golding floor in the Century building. There were no architectural reasons why the Golding system could not be used and it appears that defendant induced the owners to change the contract and permit it to use the

Johnson system. It had the commercial reason only of saving to itself the royalties on the Golding system and to make greater profits on the work than it would have realized by the use of the Golding system, but the referee and circuit court ruled that this action alone would not justify it in disregarding its contract, and properly so ruled.

It can not now, because greater advancements have been made in fireproof flooring, be allowed to set at naught its solemn agreement with plaintiff and regard it as merely optional with it whether it will comply with its contract.

"Good faith" and "utmost diligence" required it to use the Golding system when it could do so, and to abstain from the use of similar constructions.

Having encountered no architectural objections to the Golding system, and the owners not having any predilections or fancy for some other system which would debar the Golding system, and defendant having obtained a contract to use the Golding construction, its action in voluntarily obtaining the consent of the owners to substitute the Johnson system because thereby it would be enabled to realize a large profit, convicts it of not using the good faith and diligence exacted by its contract, and its conduct in so doing was a plain violation of its contract, for which it must be held to respond in damages.

What is the correct measure of the damages? Defendant insists that the royalties that would have accrued to plaintiff if the work had been done according to the Golding system is not the true measure of damages, because it insists that the failure of defendant to use that system only gave plaintiff the right to terminate the contract and not damages for its violation. Again, it invokes the measure of damages which a patentee can recover against an infringer. Obviously a different principle governs such a case. Here the damage flows from a violation of the contract. Again, he

insists that actual damages only can be recovered.   The accepted principle of damages for the breach of a contract is that they shall be sufficient to compensate for the injury done or loss suffered.

In this case the referee adopted as the measure of damages the amount of royalty fees fixed in the contract on this work done on the Century building in violation of the contract and which would have accrued to plaintiff if defendant had executed its contract with the owners to construct it according to the Golding system, but which contract it induced the owners to change by substituting the Johnson system.   When the contract was executed by the owners of the Century building and defendant, to use the Golding system, defendant became entitled to whatever profits would have inured from a compliance with it, and if the Century Company had refused to permit it to complete the work it could have sustained its action therefor, and when this contract was made it was defendant's duty to have filled it with diligence and pay over to plaintiff its royalty, and when that contract was abandoned by the voluntary action of defendant alone, it would seem that plaintiff ought to have the royalties of which it was deprived by this action of defendant.   It was not like defendant dependent upon profits which the defendant might make.   It was entitled to one cent for every square foot *constructed* under the Golding system.

A valid contract had been made between two parties able to execute it, and its performance was only prevented by the defendant.   "Where there is an express contract" (as in this case) "the contract itself should furnish the basis for estimating the damages." [Hammond v. Beeson, 112 Mo. 190.]   That plaintiff's damages in this case is the exact amount of royalty for which it stipulated and which it lost by the breach of its contract by defendant voluntarily giving up that contract for its own aggrandizement, we think is perfectly clear and reasonable.   As between the defendant

and plaintiff it can not now be heard to say that if the Johnson system had not been substituted the defendant would not have used the Golding system. It had induced the Century Company to adopt that system, had bound itself to use it and we think the weight of the evidence is that it abandoned it simply to increase its own profits, in violation of its contract with plaintiff, and that the finding of the referee on this point was supported by evidence ample to sustain it, and in our opinion the judgment on both counts is correct, and it is accordingly affirmed.

All concur.