**MISSOURI PORTLAND CEMENT COMPANY, Appellant,**

v.

**DENNY CONCRETE COMPANY, INC., et al., Respondents.**

**No. 56903.**

Supreme Court of Missouri, Division No. 2.

Sept. 10, 1973.

Motion to Transfer to Court en Banc and Rehearing Denied Oct. 8, 1973.

J. Wallace Adair, Ray S. Bolze, Robert M. Heier, Howrey, Simon, Baker & Murchison, Washington, D. C., Thomas E. Allen, Hale, Kincaid, Waters & Allen, Liberty, for appellant.

William P. Higgins, Higgins & Brimer, Wichita, Leon B. Seck, Harrisonville, Kenneth P. Seck, Kansas City, for respondents.

HOUSER, Commissioner.

This appeal involves the propriety of an order ruling motions for summary judgment filed by plaintiff Missouri Portland Cement Company (a manufacturer and supplier of cement in this and other states in the midwest) and by defendants Denny Concrete Company, Inc. (a manufacturer and supplier of ready-mix concrete to general contractors and the construction trades in Kansas City and vicinity) and individual defendants J. Gilbert Denny and E. William Geiger, officers of the corporate defendant. The order sustained all four paragraphs of defendants' motion for summary judgment, and overruled all four paragraphs of Missouri Portland's like motion. Missouri Portland appealed. This Court has jurisdiction because the amount in controversy exceeds the jurisdictional amount in effect, and the appeal was taken, prior to January 1, 1972, the effective date of Mo.Const. new Article V, § 3, V.A.M.S.

Missouri Portland's petition is in four counts. Counts I and II are based upon promissory notes in the sum of $25,000 each, executed by the corporate and individual defendants in 1966 and 1967, respectively. Count III is a claim for $67,583.68 for cement sold and delivered by Missouri Portland to Denny Concrete. Count IV is based upon the failure of Denny Concrete to redeem 500 shares of preferred stock of Denny Concrete at $100 per share pursuant to a written contract dated September 18, 1964 entered into by and between Missouri Portland and Denny Concrete, the individual defendants and their wives. That contract is challenged in this suit as violative of the antitrust laws of this State, Chapter 416, RSMo 1969, V.A.M.S. It required Missouri Portland to invest $50,000 in Denny Concrete preferred stock of a par value of $100 per share, in consideration of which investment Denny Concrete agreed to continue its normal operations during the 5-year term of the agreement (from October 1, 1964 through September 30, 1969), and to purchase from Missouri

Portland "all of its requirements of cement of any type during the five year period." Missouri Portland agreed to supply Denny Concrete all such requirements of cement, meeting standard specifications, and that "the sale price shall be no higher than the lowest established delivered price at destination in effect at the time of delivery." Denny Concrete further agreed that if it disposed of its assets during the period Missouri Portland would be given the first opportunity to purchase or lease the properties at the same price offered in good faith by a prospective purchaser or lessor, and the stockholders of Denny Concrete agreed to give Missouri Portland the first opportunity to purchase their stock. The agreement was subject to renewal for a like 5-year term and if not renewed Missouri Portland had the option to present the $50,000 preferred stock for redemption at a price of $100 per share and upon presentment Denny Concrete was obligated to pay the redemption price. The contract was executed on behalf of the two corporations by their presidents. In addition the individual defendants, who were directors and stockholders, and their wives, signed the contract in their individual capacities.

The parties stipulated that the two $25,000 notes referred to in Counts I and II were executed; that defendants have made no payment thereon; that Missouri Portland sold and delivered to Denny Concrete cement at the total invoice price as alleged, and that no part of the invoice price has been paid.

Defendants' answers alleged that the cement sales and promissory notes were all part of the same transaction; that they arose out of the contract of September, 1964, which constituted an illegal restraint of trade and conspiracy within the meaning of Chapter 416, RSMo 1969, V.A.M.S., and that by reason of § 416.100,[1] RSMo 1969, V.A.M.S., Denny Concrete is not liable for any amount on the notes, or the account, and that Denny Concrete is under no obligation to redeem the preferred stock.

Following the filing of numerous depositions, interrogatories, answers to interrogatories, and exhibits, both sides filed motions for summary judgment.

In sustaining defendants' motion the court found, conclusively and as a matter of law, that the language of the contract of September, 1964 violates the antitrust laws of Missouri, Chapter 416, RSMo 1969, V.A.M.S.; that the contract must be construed as a capturing by agreement of all of Denny Concrete's business to the total exclusion of other competing manufacturers and sellers of cement operating in the market of this state, and therefore is an agreement in restraint of trade under §§ 416.010,[2] 416.040[3] and 416.110,[4] RSMo

---

1. "Any purchaser of any article or commodity from any individual, company or corporation transacting business contrary to any provision of sections 416.010 to 416.070, and 416.-090 shall not be liable for the price or payment of such article or commodity, and may plead said sections as a defense to any suit for such price or payment."

2. "Any person who shall create, enter into, become a member of or participate in any pool, trust, agreement, combination, confederation or understanding with any person or persons in restraint of trade or competition in the importation, transportation, manufacture, purchase or sale of any product or commodity in this state, or any article or thing bought or sold whatsoever, shall be deemed and adjudged guilty of a conspiracy in restraint of trade, and shall be punished as provided in

sections 416.010 to 416.100, 416.240, 416.260 to 416.290 and 416.400."

3. "All arrangements, contracts, agreements, combinations or understandings made or entered into between any two or more persons, designed or made with a view to lessen, or which tend to lessen, lawful trade, or full and free competition in the * * * manufacture or sale in this state of any product, commodity or article, or thing bought and sold, of any class or kind whatsoever, * * * are hereby declared to be against public policy, unlawful and void; * * *."

4. "All contracts or agreements made in violation of any of the provisions of this chapter or of any other law relating to pools, trusts, conspiracies, discriminations, and unlawful combinations in restraint of trade, shall be void."

1969, V.A.M.S.; that under § 416.100,[1] RSMo 1969, V.A.M.S., Missouri Portland cannot collect for the cement sold under this contract. As another and further reason the Court gave for its ruling that as a matter of law the contract is void as in restraint of trade was that it fixed the price at which Missouri Portland sold its cement to Denny Concrete.

The court further ruled that Missouri Portland cannot collect from Denny Concrete on the two $25,000 promissory notes because they grew out of and were directly connected with and part of the conspiracy in restraint of trade, and therefore are equally void. The court arrived at this conclusion on the basis of "evidence submitted by defendants" on its motion for summary judgment, which the court considered establishes that Missouri Portland "calculatingly set about to secure and hold business by the practice of lending money to cement purchasers (or purchasing stock in their companies) in return for agreements binding them to limit their purchases exclusively to plaintiff"; that whether by way of the "outright loan of money or the purchase of stock in cement purchasers' companies, the pattern of conduct matches the arrangement with defendant Denny Concrete and this procedure is not permissible in this state under our antitrust laws," that the lending of money followed "in the wake of the contract and as a furtherance of the illegal conspiracy." The court exonerated from liability and rendered judgment in favor of the individual defendants who lent their names to the two promissory notes on the ground that the notes are component parts of an original contract which is illegal and void, and therefore the notes are void as against public policy.

Taking the position that the 1964 contract·on its face is nothing more or less than a simple requirements contract made in the ordinary course of business, Missouri Portland makes the point that the court erred in ruling that the contract on its face violates Missouri's antitrust laws;

urges that in assessing the validity of the requirements provision the court incorrectly invoked § 416.010; argues that the requirements provision does not violate § 416.040, and maintains that summary judgment was incorrectly granted. Contrariwise defendants contend that Denny Concrete's motivation in approaching Missouri Portland was not to assure itself of a continuing supply of cement but that Denny Concrete was short of working capital and was seeking financial relief; that instead of this transaction constituting a simple loan it was part and parcel of an overall plan or conspiracy on Missouri Portland's part to capture and hold Denny Concrete's business and to obtain control over numerous other ready-mix concrete producers through loans, acquisitions of stock or outright purchase of their businesses, in order to enhance its market for cement. Defendants argue that instead of being a simple requirements contract this was a "tying" arrangement in which the advancement of capital by Missouri Portland was expressly conditioned upon Denny Concrete's agreement to purchase all of its cement from Missouri Portland for a period of five years, thus requiring Denny Concrete to surrender its free choice between competing products and curbing and suppressing competition by other manufacturers of cement, in violation of the antitrust statutes. Defendants assert that the court did not err in ruling that the 5-year contract violates Missouri's antitrust laws, and that the court properly entered summary judgment for them on this issue.

The circuit court ruled as a matter of law that the 1964 contract violates the antitrust statutes. Its findings make it clear that this determination was made solely upon the basis of an examination of the provisions of the contract. In entering summary judgment for defendants the circuit court fell into error.

■ In State ex inf. Hadley, Atty. Gen. v. Standard Oil Co., 218 Mo. 1, 116 S.W. 902 (banc 1909), aff. 224 U.S. 270, 32 S.Ct. 406, 56 L.Ed. 760 (1912), this Court an-

nounced the common-law rule "that two or more parties may enter into any lawful contract regarding any matter, and, if that otherwise legal contract only incidentally limits trade or fixes prices, then that legal contract will not be held void on the ground that it incidentally operated in restraint of trade. * * * But if the primary purpose of the contract was to limit and restrain trade, then the contract would be void at common law, and'would not be protected by the constitutional provision mentioned, however slight that interference or restraint might have been." 116 S.W. 1. c. 1018(f). The Court further observed that the same may be said of the antitrust statutes; that "(t)hey prohibit the making of all contracts and combinations which have for their object and purpose the restraint of trade or the fixing and maintaining of prices; but those sections in no manner denounce as illegal any contract regarding trade which has for its object a legitimate purpose and which only incidentally stifle trade." 116 S.W. 1. c. 1019. That the statutes condemn every *direct* restraint of trade, great or small, but do not apply to contracts, otherwise lawful, which *incidentally* restrain trade, is made further manifest in State v. Boeckeler Lumber Co., 301 Mo. 445, 256 S.W. 175, 200 (banc 1923) and State v. People's Ice, Storage & Fuel Co., 246 Mo. 168, 151 S.W. 101, 118 (1912).

■ We find nothing on the face of the contract of September, 1964 evincing a primary object and purpose to impose a direct limitation or restraint upon trade, or to further any predatory or otherwise nefarious purpose prohibited by the antitrust statutes. On its face it appears to be an ordinary commercial contract designed to further the mutual business interests of the contracting parties. Denny Concrete had a business interest in obtaining capital and in insuring a dependable source of supply of cement of standard specification and at lowest established price for a sustained period. Missouri Portland had an interest in the continued operation of Denny Concrete

and in furnishing all of its cement requirements for the period in question, and an interest in Denny Concrete's earnings potential, by reason of its purchase of stock in the company. On its face the contract in question appears to be a reasonable and proper vehicle to further these purposes. On its face the document is not the kind of a contract the General Assembly had in mind when it enacted the antitrust statutes. What this Court said in Standard Oil, supra, 116 S.W. 1. c. 1027–1028, is apropos: "This act * * * must have a reasonable construction. It was not its purpose to prohibit or to render illegal the ordinary contracts or combinations of manufacturers, merchants, and traders, or the usual devices to which they resort to promote the success of the business, to enhance their trade, and to make their occupations gainful, so long as those combinations and devices do not necessarily have a direct and substantial effect to restrict competition * * *." On its face this is a requirements contract. "Requirements contracts * * * may well be of economic advantage to buyers as well as to sellers, and thus indirectly of advantage to the consuming public. In the case of the buyer, they may assure supply, afford protection against rises in price, enable long-term planning on the basis of known costs, and obviate the expense and risk of storage in the quantity necessary for a commodity having a fluctuating demand." Standard Oil Co. v. United States, 337 U.S. 293, 306, 69 S.Ct. 1051, 1058, 93 L.Ed. 1371 (1949). In the case of the seller such contracts may be of benefit by reducing selling expenses and affording protection against price fluctuations. Standard Oil, supra, 337 U.S. 1. c. 306, 69 S.Ct. 1051. Requirements contracts made in the usual course of business have been approved by the courts of this State on numerous occasions. Wiggins Ferry Co. v. Chicago & Alton R. R. Co., 73 Mo. 389 (1881); Standard Fireproofing Co. v. St. Louis Expanded Metal Fireproofing Co., 177 Mo. 559, 76 S.W. 1008 (1903); Staroske v. Pulitzer Pub. Co., 235 Mo. 67, 138 S.W. 36 (1911); Cantrell v.

Knight, 72 S.W.2d 196 (Mo.App.1934); Banner Creamery Co. v. Judy, 47 S.W.2d 129 (Mo.App.1932); Royal Brewing Co. v. Uncle Sam Oil Co., 205 Mo.App. 616, 226 S.W. 656 (1920). The limited extent to which this contract would restrain trade is merely incidental and not of such nature as to materially affect the public interest. Cantrell v. Knight, supra, 72 S.W.2d 1. c. 200. As the California court expressed it in Great Western Distillery Products v. John A. Wathen Distillery Co., 10 Cal.2d 442, 74 P.2d 745, 746 (1937): " * * * [I]t may be stated as a general rule that courts will not hold to be in restraint of trade a contract between individuals, the main purpose and effect of which are to promote and increase business in the line affected, merely because its operations might possibly in some theoretical way incidentally and indirectly restrict trade in such line." As pointed out in Jones Inv. Co. v. Great Atlantic & Pacific Tea Co., 65 S.W.2d 495, 496 (Tex.Comm.App.1933) every executory sale of merchandise involves an implied agreement that the purchaser will not purchase the merchandise constituting the subject matter of the contract from anyone but the seller, and if antitrust statutes are to be construed to prohibit contracts of this kind then all such sales would fall within the scope of the statutes. This would reach an unreasonable result, detrimental to the public, which would render the statutes of doubtful validity. The circuit court erred in ruling that the 1964 contract was void on its face.

■■■■ Nor is the 1964 contract void as a matter of law on the ground that it is an illegal "tying" agreement. Citing Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L. Ed.2d 495 (1969); United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L. Ed.2d 11 (1962), and Northern Pacific R. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), defendants claim the 1964 contract is an illegal tying arrangement; that the advancement of loans and capital was the tying item and cement was the tied item; that the advancement of capital by Missouri Portland, expressly conditioned upon Denny Concrete's agreement to purchase all of its cement from Missouri Portland for 5 years, restrained trade and lessened competition, thus constituting a per se violation of the antitrust statutes. The vice of an illegal tying arrangement is the use in one market of economic power with respect to the tying product in such a manner as to appreciably restrain free competition in the market for the tied product. Northern Pacific, supra, 356 U.S. 1. c. 6, 78 S.Ct. 514. Northern Pacific, which owned vast acreage of land adjoining its railroad rights of way, adopted the practice of leasing that land only to those who agreed to ship their goods over its railroad, thus forcing shippers to choose rail service on the basis of their desire for Northern Pacific's land and not on the basis of which railroad could provide the best service. The court upset this practice as illegal tying but recognized that "where the seller has no control or dominance over the tying product so that it does not represent an effectual weapon to pressure buyers into taking the tied item any restraint of trade attributable to such tying arrangements would obviously be insignificant at most." 356 U.S. 1. c. 6, 78 S.Ct. 1. c. 519. This case falls within the latter class of cases. Missouri Portland had no control or dominance over the money market or the supply of capital. Denny Concrete could have obtained the sums advanced by Missouri Portland from other available sources, and their principal officers so testified by way of deposition.

Missouri Portland urges error in ruling that the 1964 contract contained an illegal price fixing provision. The circuit court gratuitously introduced illegal price fixing into the case without defendants having relied upon it as a defense, and defendants make no such contention on appeal. We therefore do not pass upon the question because it is not a genuine issue in the case.

While the circuit court, in passing upon the validity of the contract, restricted its view to the face of the contract, defendants in their briefs on appeal do not place their reliance solely upon the contents of the contract. In addition defendants make extensive reference to extraneous facts, and in their effort to outlaw the contract draw heavily upon 90 pages of exhibits, which they have preserved for review in a supplemental transcript on appeal filed by them. Defendants draw heavily on these exhibits in their contention that the motives, intentions and purposes of Missouri Portland taint the 1964 contract. These exhibits consist of what purport to be contracts with other concrete companies, minutes of the meetings of the executive committee of Missouri Portland, letters, proposed contracts with other companies, inter-office reports, etc. In passing upon the subordinate question whether the promissory notes "grew out of" the 1964 contract the trial judge did not restrict his view to the face of the contract. In addition he relied upon (and referred in his findings to) "the evidence submitted by defendants" in support of their motion for summary judgment, thus referring to the exhibits contained in the supplementary transcript. In deciding *as a matter of law* on the basis of these exhibits that the notes should be tarred with the same brush as the contract the court erred for two reasons. In the first place, the exhibits were not supported by affidavits and were neither originals nor certified copies. Unauthenticated, they did not prove themselves. In the present state of the record these exhibits are hearsay. Evidence relied upon in support of a motion for summary judgment must be substantiated. In the second place, while these exhibits after authentication may *tend* to establish the motives, intentions and purposes of Missouri Portland as to the primary object of the contract of 1964 and whether the notes were component parts of the whole transaction, they are *not conclusive* on these issues. These exhibits raise, but do not settle, the fact questions. As constituted and filed these exhibits do not constitute the unassailable proof as a matter of law required by Rule 74.04(h), V.A.M.R., to render summary judgment on an issue triable by jury or by court on jury waiver. There is yet a live and unsettled controversy whether the primary object and purpose of the contract of 1964 was to limit and restrain trade, and whether the promissory notes signed in 1966 and 1967 were part and parcel of and inextricably connected with the 1964 contract. Since there are unresolved genuine issues of material fact remaining in the case Missouri Portland is entitled to a trial of the issues as to the validity of the 1964 contract, including the redemption clause, and as to the validity of the two promissory notes. This conclusion harmonizes with decisions of the United States Supreme Court strictly limiting the use of summary judgment procedure in antitrust actions in which motives and intentions are of importance. Norfolk Monument Co., Inc. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969); White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In the latter case the Court said: "We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, * * *. * * * Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" 368 U.S. l. c. 473, 82 S.Ct. l. c. 491. Federal decisions construing Rule 56 of the Federal Rules of Civil Procedure are persuasive in applying our Missouri Rule 74.04. Elliott v. Harris, 423 S.W.2d 831, 835 (Mo. banc 1968).

Accordingly, it was error to sustain defendants' motion for summary judgment on all four counts.

Missouri Portland raises the point that the court erred as a matter of law in ruling that the two individual defendants could invoke § 416.100 [1] as a defense to the

two promissory notes, and in not entering judgment on the notes for Missouri Portland and against the individuals. The argument is that since Denny and Geiger were "complete strangers to the 1964 agreement" they could not invoke the invalidity of that agreement as a defense to claims arising out of separate transactions. This point is without merit for the reason that the two individuals (as well as their wives) were signatories to the 1964 agreement. The individual defendants may properly invoke the antitrust statutes as a defense on the promissory notes, and if on trial on remand it is determined that the 1964 contract violated the antitrust statutes and that the notes were parts of the same transaction, the individuals as well as Denny Concrete will be discharged from any liability on the notes.

Summary judgment for Missouri Portland and against the individual defendants on the notes would be erroneous for the same reason that we are setting aside the summary judgment for defendants, namely, there is a genuine unresolved issue of material fact, i. e., whether the notes are tainted as integral parts of an illegal enterprise. The record does not bear out Missouri Portland's contention that the notes were not referred to or anticipated as part of the 1964 discussions and that the conclusion is "inescapable" that the 1966 and 1967 loans did not arise out of the 1964 agreement. For instance, Mr. Denny testified by way of deposition that at the time the preferred stock was purchased "we were informed that later on that if the need be, they would advance us some more money, on a loan basis."

In the Conclusion portion of its brief Missouri Portland suggests as alternative relief that judgment be entered for Missouri Portland on all four counts of its petition on the ground that the alleged antitrust violation involves interstate commerce and therefore Missouri's antitrust laws are inapplicable to the transactions in issue. Although preserved below this point has not been carried forward in the points

and authorities in Missouri Portland's appellate brief, and therefore is not before us for appellate review. The question, however, is not foreclosed from inquiry on remand.

Judgment reversed and cause remanded for trial of the issues in a manner consistent with the views expressed in this opinion.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.