### HEATH et al. v. AMERICAN BOOK CO.

(Circuit Court, D. West Virginia. October 18, 1899.)

TORTS—INTERFERENCE WITH PERFORMANCE OF CONTRACT.

> One having a contract with a state, made pursuant to law, to supply, for a term of years, all of certain text-books, adopted by act of the legislature, for use in the public schools of the state, may maintain an action for damages against a third person, who, with knowledge of the facts, induces the school-book boards of counties to purchase books from him and discard those of the plaintiff.

Heard on Demurrer to Declaration.

Daniel B. Lucas, for plaintiffs.
Flick, Westenhaver & Noll, for defendant.

JACKSON, District Judge. This suit is an action of trespass on the case brought by the plaintiffs against the defendant in the circuit court of Morgan county, W. Va., to recover damages from the defendant for an alleged interference by the defendant with the rights of the plaintiffs, in furnishing certain school books to the school-book boards of the state, under and by virtue of the several statutes of the state providing for the furnishing of books for the use of the schools throughout the state, and, upon the petition of the defendant, the case was moved into this court. The declaration alleges that on the 22d day of February, 1895, the legislature of West Virginia passed an act providing for a series of text-books, to be used in the public schools of this state, and providing for the contracting of the same and establishing a "school-book board"; that by the first section of the said act it was provided that on and after the 1st day of July, 1896, certain text-books and none other (except as thereinafter provided) should be used, among which were text-books known as "Hyde's Language Lessons," "Hyde's Advanced Lessons in English for High Schools," and "Harvey's Revised English Grammar for High Schools." It was further provided that the state superintendent of schools should, on or before the 1st day of September, 1895, contract with the several publishers for the text-books named in the statute, or that may be adopted under the provisions of the act for supplying such books for use in the free schools of

the state, and providing the terms upon which the books were to be sold, and that the contract should run for a period of five years, beginning with the 1st day of July, 1896. There were certain other provisions of the act, unnecessary to notice, requiring bond to be given by persons who entered into the contract, and directing the governor, in a certain event, to appoint three persons, citizens of the state, who were to be the "state school board." Plaintiffs allege that they are the owners of the Hyde series of text-books described and set out in the statute heretofore referred to, and that they contracted with the state superintendent of schools before the 1st day of September, as required and prescribed by law, to supply the books, and that they in every respect complied with the provisions of the act. The declaration further alleges that on the 19th day of February, 1897, the legislature of West Virginia passed an act amending the school law of West Virginia, and providing for the establishing in every county of the state of a "school-book board"; prescribing its duties as to the manner of selecting, purchasing, and providing text-books for the public schools, imposing a limitation in the act that nothing contained in it should be construed as changing or modifying the contracts made with publishers of text-books under authority of chapter 37 of the Acts of 1895; and providing that no change in the text-books should be made until the expiration of the contracts made under the provisions of the act of 1895, except by failure of the contractor to provide the books contracted for. There are other provisions in the law of 1897 that bear, to some extent, upon the question before us, but are not deemed of sufficient importance to refer to in this opinion. It is alleged that the defendant, the American Book Company, declined to enter into any contract with the superintendent of schools, as provided for in the act of 1895; but that subsequently the defendant company wrongfully and unlawfully submitted for consideration to the school-book boards in some, if not all, of the counties of West Virginia, a grammar to be by them adopted, under the act of 1897, entitled "Harvey's Revised English Grammar," a publication owned and published by the defendant, although, at the time the defendant submitted this book to the consideration of the school-book boards, it well knew that a contract existed between the plaintiffs in this action and the state, by which the plaintiffs were to furnish Hyde's series of books heretofore referred to, and that the adoption of the defendant's book by the county school-book boards in lieu of plaintiffs' books would be in violation of the statutes of West Virginia, and also of the instructions given to said school-book boards by the state superintendent of schools; and it is further alleged that the defendant wrongfully and unlawfully urged upon said boards and other school officers and teachers of West Virginia to use, in the primary, graded, and high schools of the state, the said unauthorized text-book, and contracted with many of said county school-book boards to sell them said text-book. To the allegations of the plaintiffs' declaration the defendant interposes a demurrer, and insists that this action cannot be maintained, for the reason that the acts complained of are the acts and neglect of the school-book boards

of the several counties in the state of West Virginia, and are not the acts of the defendant, and that the use of text-books in the free or public schools of the state is a matter exclusively under the control of the school-book boards of the various counties and districts in the state, for whose decisions, wrongful or rightful, in adopting or contracting for unauthorized text-books in the place of authorized text-books, the defendant is not responsible.

It is a general principle of law that a state cannot be sued, and for this reason public officers may, and some of them often do, violate contracts entered into by the state, for which there is no remedy except by an appeal to the legislative body; nor can, in this instance, the school-book boards be sued, for the reason that they have no legal existence against which an action at law could be maintained. For these reasons, I presume, the plaintiffs, in bringing their action, sought relief against the only party whom they supposed to be liable in law. The question now under consideration is whether or not any improper means were resorted to, or improper influences used, by the defendant in this case, to secure such action upon the part of the officers of the state, so as to interfere with the rights of the plaintiffs, under their contract and agreement with them for the use of the books that were authorized and designated by the acts of the assembly for the use of the free schools. If they did do this, are they, under the law, liable?

The declaration alleges that the defendant "wrongfully and unlawfully submitted for consideration to the school-book boards in West Virginia, for their use and adoption, certain books, which they knew was contrary to law, and to the instructions given to the county school-book boards by the state superintendent of schools." It is a settled principle of law that there is no wrong for which there does not exist a remedy. It cannot be denied that the plaintiffs in this action, as alleged in their declaration, had a legal and existing contract, authorized by the act of 1895, with the state, for two years prior to the action of the defendant complained of; that, under that contract, they were entitled to furnish certain books for the period of five years; but that, prior to the termination of that contract, the defendant in this case presented itself to the county school-book boards, and induced them to consider its application for the supplanting of the books of the plaintiffs by the book of the defendant, which the school-book boards, after examining the book and considering the application of the defendant, decided to do, and the books of the plaintiffs were discarded, and the book of the defendant used in their places. Can it be denied that there was a wrong perpetrated by both the school-book boards and the defendant in this case? It is not alleged in the declaration that a conspiracy existed between them, and it is unnecessary to so allege; for if the parties, or either of them, are responsible, then each one is primarily responsible, and there exists no legal necessity why they should be joined together in a suit, even if a liability in law existed, as against the school-book boards.

The question for the court to consider and determine is whether or not the damage complained of in this case is the natural result

and consequence of the defendant's act. If so, ought not the defendant to be held liable? The plaintiffs allege that the American Book Company wrongfully and unlawfully submitted its book to the school-book boards, to the prejudice of the books of the plaintiffs in this action, which the defendant well knew at the time were being used in the schools under and by virtue of a contract between the plaintiffs and the state, and in pursuance of an act of the legislature which specified and enumerated the books of the plaintiffs that were to be used in the schools; but, notwithstanding this, the defendant was able to induce the school-book boards of the state to use its book instead of the plaintiffs' books, and thereby to entirely supplant the use of the plaintiffs' books in the state.

I have carefully considered the authorities cited and relied upon by the defendant,—especially the Kentucky case of Bourlier v. Macauley, 91 Ky. 135, 15 S. W. 60, and other authorities cited to sustain the ruling in that case,—and I am inclined to think, although there is a conflict of authority upon the questions arising upon this declaration, that the better rule is for the courts to sanction an action of this character; otherwise, a great wrong could be inflicted without any remedy. Such was the conclusion of a majority of the court in the leading case of Lumley v. Gye, 2 El. & Bl. 216; and the doctrine there laid down has been considered settled law from that time, although there are some cases that are in conflict with it. In Wood's Mayne, Dam. (1st Ed.) p. 67, § 52, under the title of "General Principle," he states the law to be, in cases of this character, that "the first, and in fact the only, inquiry, in this class of cases, is whether the damage complained of is the natural result of the defendant's act," and says: "It will assume this character, if it can be shown to be such a consequence as, in the ordinary course of things, would flow from the act, or, in cases of contract, if it appears to have been contemplated by both parties." For this position he cites in the footnotes numerous authorities. In this case we think it cannot be denied that the damage complained of was the result of the defendant's act in submitting its book to the school-book boards, and urging them to adopt it in lieu of the plaintiffs' books, which resulted in supplanting the plaintiffs' books by the school-book boards, and their use dispensed with in the schools, and that, when the contract was entered into between the school-book boards and the defendant, such was contemplated by both parties to it. If the plaintiffs in this action cannot get redress from the party who interfered with their business, as alleged in the declaration, then there is a great wrong to the plaintiffs without a remedy. For the reasons assigned, I am of opinion to overrule the demurrer.