DR. MILES MEDICAL CO. v. GOLDTHWAITE.

(Circuit Court, D. Massachusetts. September 20, 1904.)

No. 1,804.

1. INJUNCTION—INDUCING VIOLATION OF CONTRACT—INJURY TO BUSINESS.

Complainant is a manufacturer of proprietary medicines put up in distinctive packages, and sold only through wholesale and retail dealers in drugs, with whom complainant has contracts providing that the medicines shall be sold only at certain uniform prices, and to no other dealer than such as become parties to the contract, a list of whom is furnished by complainant. Defendant, a retail druggist who was not on the list, procured the medicines through another, who in selling them violated

his contract, and in selling the same defendant mutilated the packages so as to prevent identification, and in some cases emptied the original package into a plain package. He also sold the medicines at prices below those fixed by the contract. *Held*, that such contracts were legal and enforceable, and that complainant was entitled to an injunction restraining defendant from interfering with the contracts by inducing their violation by parties thereto, and also from selling the medicines as complainant's in other than the original packages and at the contract price, to the injury of complainant's business and good will.

In Equity. Suit for injunction.

The following statement of facts is condensed from the brief for complainant and the evidence:

Complainant, the Dr. Miles Medical Company, manufactures proprietary medicines, all of which are made under formulas which are secret, and are sold under trade-names, and in packages of peculiar and distinctive style, in all of which complainant possesses, as far as it legally may, an exclusive monopoly. The company has adopted an elaborate system to control the prices, at wholesale and retail, of its articles, and insure sales of its articles at uniform prices. The retail prices are stamped on the packages and labels, and are advertised. Contracts with the wholesale or jobbing druggists and with retail druggists, and a system of numbers stamped on each package, and report cards from wholesale dealers, enable each package to be traced and identified. The provisions of the wholesale contract are, in substance, that the wholesale agent, in consideration of being supplied with Dr. Miles' remedies at certain prices, agrees to sell the same only at certain prices, and only to people whom the Dr. Miles Medical Company shall previously designate, and to fill out the proper cards and slips which are inclosed in the packing cases, making the number of the slip correspond with the number on the package, and filling out in the body of the card the name of the purchaser. The names of the persons to whom the Dr. Miles Medical Company permits its goods to be sold by the wholesaler are contained in lists which are furnished the wholesaler from time to time, and contain only the names of persons who have entered into the regular retail contract with the Dr. Miles Medical Company. The retail agency contract provides, in substance, that, in consideration of being furnished with the Dr. Miles Medical Company's preparations, he will sell only at certain prices stipulated in the contract and marked upon the packages of medicines, that he will stamp his name upon the packages, and that he will not sell to any other druggist, either wholesale or retail, who has not entered into a contract with the Dr. Miles Company.

The evidence showed that defendant was a retail druggist who had not entered into the contract with complainant; that he had, however, procured a supply of complainant's medicines through a dealer who was a party to the contract, and was selling the same at less than the contract price when complainant's medicines were called for, but first mutilating the packages and destroying the numbers thereon so they could not be identified, and in some cases emptying the medicine from the original package into a plain package, in which it was given to the purchaser without any direction as to its use. There was also evidence that such practice tended to impair the confidence of purchasers in the remedies.

The bill prayed for a temporary and permanent injunction restraining defendant from interfering with complainant's contracts by inducing, or attempting to induce, dealers who had entered into the same to sell him goods in violation thereof, and, second, from selling complainant's medicines otherwise than in the original packages without alteration. The order, entered on a motion for preliminary injunction, and the final decree awarded injunctions in conformity to such prayer.

George L. Huntress, Frank F. Reed, and Edward S. Rogers, for complainant.

F. M. Bixby, for defendant.

COLT, Circuit Judge. On this motion for a preliminary injunction the defendant has filed no counter affidavits in reply to the moving affidavits of the complainant, nor has the defendant's counsel filed any brief in reply to the exhaustive printed brief of the other side. From these circumstances it looks as if the defendant did not seriously intend to contest the granting of this motion. The complainant has taken the testimony of the defendant. Upon that testimony alone, and especially upon that portion of it in which he states his connection with George M. Lilley, and the manner and circumstances under which he obtained the proprietary medicines in question through Lilley, the complainant is entitled to a preliminary injunction. See Sperry & Hutchinson Co. v. Mechanic's Clothing Co. (Circuit Court of the United States, District of Rhode Island, February 15, 1904, opinion by Judge Brown) 128 Fed. 800.

Motion granted April 25, 1904.

September 25, 1904, on complainant's motion, the preliminary injunction was made perpetual.