JULIUS GARST *vs.* CLARENCE A. CHARLES.

Worcester. November 14, 1904. — January 3, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Conspiracy,* Civil. *Equity Jurisdiction.*

A conspiracy to deprive one of the benefit of a contract with another is unlawful.

The owner and manufacturer of a proprietary medicine, who sells it only to retail dealers under contracts binding them not to sell it at less than a specified price, may maintain a suit in equity against a retail druggist, who conspires with another person to have the other person buy the medicine from the plaintiff for the purpose of breaking the contract which he signs, by selling the medicine at the wholesale price to the defendant to be sold by him at retail at a price less than that specified in the contract, and who sells the medicine in accordance with this plan. In such a suit the plaintiff is entitled to an injunction, and to damages for the injury already suffered.

BILL IN EQUITY, filed June 16, 1903, by the owner and manufacturer of a proprietary medicine known as phenyo caffein, made from a secret formula originated and owned by the plaintiff, the trade mark of the medicine being registered in the United States patent office and in the office of the secretary of the Commonwealth of Massachusetts, to restrain the defendant, a retail druggist, from selling the medicine for less than twenty-five cents a box or advertising it for sale at less than that price, and from inducing and procuring one Bickford or any other person to buy the medicine from the plaintiff and sell it to the defendant in violation of the contracts made by such

purchasers with the plaintiff, and for damages suffered from such wrongful acts of the defendant already committed.

The defendant demurred. In the Superior Court the case was heard upon the bill and demurrer by *Maynard,* J., who overruled the demurrer, and made the following decree :

" This cause came on to be heard upon the defendant's demurrer and was argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged and decreed that the defendant's demurrer to the plaintiff's bill of complaint be overruled and thereupon, the defendant having elected to stand by his demurrer and waiving his right to answer to the said bill of complaint, the court found the material allegations in said bill of complaint to be true and that the equity of said cause was with the complainant:

" And it is further ordered, adjudged and decreed that the defendant, his servants or agents, be and each and all of them are hereby restrained and perpetually enjoined from selling or offering to sell, for less than twenty-five (25) cents per box, phenyo caffein purchased by the defendant of, or delivered to the defendant by, persons who have been procured by the defendant to purchase and who have purchased of the plaintiff directly, or through the plaintiff's agent, Carter, Carter & Meigs, or through any other agents of the plaintiff who have entered into the agreement annexed to the plaintiff's bill of complaint, such phenyo caffein under an agreement to abide by the terms of said agreement and of the notice, a copy of which is annexed to the plaintiff's bill of complaint, and which the defendant has purchased or procured of such agents either with or without agreeing to abide by the terms of said contract and notice :

" And it is further ordered, adjudged and decreed that the defendant, his servants and agents, be and each and all of them are hereby restrained and perpetually enjoined from, directly or indirectly, inducing any person or persons to procure of the plaintiff, his agents or servants, any of said phenyo caffein under an agreement to abide by the terms contained in said agreement and notices with the intent on the part of the person so procuring said phenyo caffein to sell or deliver the same to the defendant without the defendant's agreeing to the terms of said agreement and notices :

"And it is further ordered, adjudged and decreed that the defendant, his servants and agents, be and each and all of them are hereby restrained and perpetually enjoined from inducing and procuring Frank B. Bickford, mentioned in the plaintiff's bill, or any other person to violate any of the terms or conditions in said contracts for the sale of phenyo caffein made between said Bickford or any other person and the plaintiff or his agents :

"And it is further ordered, adjudged and decreed that the plaintiff has been damaged in consequence of the acts and conduct of the defendant complained of in the plaintiff's bill to the extent of one hundred and one (101) dollars, and it is decreed that the defendant pay the plaintiff said sum of one hundred and one dollars together with the cost of these proceedings and that execution may issue therefor."

The defendant appealed.

The contract in question in this case differed somewhat in form from that printed in *Garst* v. *Harris*, 177 Mass. 72, and sought to be enforced in that case and in *Garst* v. *Hall & Lyon Co.* 179 Mass. 588.

The contract in the present case was as follows :

" Notice.

" All persons handling Phenyo-Caffein are hereby notified that all Phenyo-Caffein remains the property of the Phenyo-Caffein Company subject to the conditions named in the following contract, said conditions to remain in force until revoked by us.

"Phenyo-Caffein Co.,

" Julius Garst, Proprietor.

" Contract.

" Between the Phenyo-Caffein Company, hereinafter called the Company, and the retail acceptor of goods made by it, hereinafter called the Acceptor.

" In consideration of an exchange of values the company and the acceptor agree as follows :

" a — The company agrees.

" 1. To deliver possession of goods of its make to the acceptor on the terms and conditions that he will not sell the 25 cent size, for less than 25 cents a box, nor the 10 cent size for less than 10 cents.

" 2. To take back from the acceptor, upon written request, possession of any of the said goods at the net price at which they were delivered to the acceptor.

" b — The acceptor agrees.

" 1. Not to sell the 25 cent size, for less than 25 cents a box, nor the 10 cent size for less than 10 cents.

" 2. That in case the fact should be established that the contract has been violated by him, he agrees to pay to the company, twenty-one dollars, that sum being the agreed amount that the company would be damaged by a breach of this agreement. This clause, as to the amount of damages, is inserted because it is recognized and agreed that a breach of this agreement would cause the company to suffer a material loss, and also that it would be difficult, and usually impossible to prove the exact amount of such loss.

" 3. That the acceptance of possession of any of said goods at any time or times shall be an assent on his part to the foregoing terms and conditions.

" Price and discount to the retail trade.

" $1.20 per dozen, 10 cent size, less $41\frac{2}{3}$ per cent. discount, i. e., 75 c.

" $3.00 per dozen, 25 cent size, less $41\frac{2}{3}$ per cent. discount, i. e., $1.75 per dozen.

" $\frac{1}{2}$ gross lots, either size or assorted, $41\frac{2}{3}$ per cent. and 5 per cent. discount, i. e., $9.97 (25 c. size).

" 1 gross lots, either size or assorted, $41\frac{2}{3}$ per cent. and 10 per cent. discount, i. e., $18.90 (25 c. size). 1 per cent. cash, ten days."

Upon every box of the twenty-five cent size was the following notice :

" Important Notice.

" The Phenyo-Caffein Co. retains the ownership of this box and of the pills contained therein, and authorizes their sale under the name Phenyo-Caffein by anyone in possession only, at the face price, 25 c. Whoever sells said goods (unless he has acquired title thereto by paying face price for the same) does so as agent for the Phenyo-Caffein Co., and has no authority to vary from the terms of this notice. Whoever obtains said

goods for a less price from such agent acquires only wrongful possession and cannot rightfully sell nor consume the same. Any agent that sells said goods at less than face price agrees to pay to the Phenyo-Caffein Co. $21 as liquidated damages for the injury done, such injury being incapable of exact measurement."

Upon every carton or package of twelve boxes of the twenty-five cent size was the following notice:

" Notice to Retailers of Phenyo-Caffein.

" In consideration of the delivery of the possession of this dozen boxes of phenyo-caffein, or any part thereof from the Phenyo-Caffein Company, directly or through the agency of a distributor or otherwise, the retail distributor agrees that he will act as agent of said company in selling said goods, and will not sell phenyo-caffein, 25 c. size, for less than 25 c. per box. The retail distributor further agrees that the acceptance of said goods shall be held to be an assent on his part to the foregoing terms, and in case he violates the same, said distributor agrees to pay to the Phenyo-Caffein Company the sum of $21 as liquidated damages for the injury done, such injury being incapable of exact measurement.

" Should the retail distributor desire to discontinue dealing in phenyo-caffein and notify the company of that fact in writing, said company agrees to take back any of the said phenyo-caffein at the net cost at which it was delivered to the distributor, provided the goods are in good condition.

" Phenyo-Caffein Co.,

" Worcester, Mass."

*E. H. Vaughan*, for the defendant.

*W. Thayer, H. W. Cobb & F. A. Walker*, for the plaintiff.

KNOWLTON, C. J. The plaintiff, being the owner and manufacturer of a proprietary medicine known as phenyo caffein, sold it only to retail dealers under contracts in which they agreed not to sell it at less than a specified price, and he undertook to stipulate that purchasers from his purchasers should obtain and sell it only under such an agreement. His right to secure such advantages to himself, so far as possible by contracts in proper form, is not now questioned. See *Garst* v. *Harris*, 177 Mass. 72; *Park & Sons Co.* v. *National Wholesale Druggists' Association*, 54 App. Div. (N. Y.) 223.

The defendant is a retail druggist who knew that all phenyo caffein was sold by the plaintiff under the contracts referred to, and with notices affixed to the small boxes and to the larger packages showing the understanding of the plaintiff and of the purchasers as to the price at which it might be sold. After buying a quantity of medicine from the plaintiff, he returned it, in accordance with the terms of his contract under which he had a right to return it if he wished to discontinue the business of selling it, and he notified the plaintiff's agents that he should not keep the medicine. He then procured one Bickford, who was a retail druggist, to buy a large quantity of the medicine from the plaintiff's agents, and Bickford entered into a contract such as has been referred to, and agreed that he would fulfil all the terms of the contracts and notices affixed to the boxes and packages, one of which was that he would act as the agent of the plaintiff and would not sell the medicine at less than the specified price. He purchased the goods at a much less price, which was the discount rate made by the manufacturer to the retail trade, as stated in the contract. He then turned it over to the defendant at the purchase price, and the defendant has been selling it and advertising it for sale at retail at less than the specified price. All this was in pursuance of a conspiracy between the defendant and Bickford that Bickford should make this contract and should break it, to the injury of the plaintiff for the benefit of the defendant.

A conspiracy to deprive one of the benefit of a contract with another is unlawful. *Carew* v. *Rutherford*, 106 Mass. 1. *Walker* v. *Cronin*, 107 Mass. 555. *Vegelahn* v. *Guntner*, 167 Mass. 92. *Plant* v. *Woods*, 176 Mass. 492. The defendant's arrangement with Bickford that he should break the contract was a wrong upon the plaintiff, intended for the defendant's advantage. The scheme was fraudulent. The purpose of the defendant was to induce the plaintiff to part with his property at a comparatively low price to a person who was in fact a retail druggist, and who represented by his words and conduct that he wanted the medicine to sell at retail, and who agreed not to sell it at less than the regular retail price, when in fact he was obtaining it under an arrangement to turn it over to the defendant at the wholesale price, to be sold by him at retail at less than the

regular price. The defendant was a party to this scheme of fraud, and presumably was the author of it. He should be held liable for the wrong. *Exchange Telegraph Co.* v. *Central News,* [1897] 2 Ch. 48. *Dodge Co.* v. *Construction Information Co.* 183 Mass. 62. In this respect the case is very different from *Garst* v. *Hall & Lyon Co.* 179 Mass. 588. See also *Taddy* v. *Sterious,* [1904] 1 Ch. 354.

The suit is one which calls for relief in equity. The damages are of a kind that cannot be accurately computed or easily estimated. The remedy at law is not complete and adequate, and an injunction with damages for the injury already suffered gives the only proper relief.

*Decree affirmed.*