DR. MILES MEDICAL CO. v. JAYNES DRUG CO. et al.

(Circuit Court, D. Massachusetts. December 12, 1906.)

No. 300.

1. INJUNCTION—INDUCING VIOLATION OF CONTRACTS—SUFFICIENCY OF BILL.
    A bill by a manufacturer of proprietary medicines, sold only to wholesale and retail druggists having direct contracts with complainant, to enjoin defendant from inducing such customers to break such contracts by

selling to defendant in violation of their terms, is sufficiently certain, although it does not specify the customers who have so been induced to violate their contracts, where it shows that, before reselling the medicines so procured, defendant removes the cartons, labels, and serial numbers from the bottles, so that they cannot be traced to any particular customer.

**2. SAME.**
> Such a bill states a cause of action for an injunction where the contracts sought to be protected are lawful.

**3. CONTRACTS—LEGALITY—CONDITION IN CONTRACTS FOR SALE OF PROPRIETARY MEDICINES—RESTRAINT OF TRADE—MONOPOLIES.**
> The manufacturer of an article sold as a medicine, and made under a secret process or formula of which he is the sole owner, may lawfully, by contracts with purchasers, impose such conditions as he sees fit with respect to the prices at which they shall be sold to others, or the persons to whom they may be sold; and such contracts, like similar contracts with respect to articles made under a patent or copyright, are outside the rule of restraint of trade, whether at common law or under the federal antitrust statute. Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200].

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 542, 544.

> Monopolistic contracts—validity as affected by public policy, see note to Chicago, M. & St. P. Ry. Co. v. Wabash, St. L. & P. Ry. Co., 9 C. C. A. 666; Cravens v. Crater-Crume Co., 34 C. C. A. 486.]

In Equity. On demurrer to bill.

Frank F. Reed, George L. Huntress, and Edward S. Rogers, for complainant.

Whipple, Sears & Ogden and Alexander Lincoln, for defendants.

COLT, Circuit Judge. This is a bill in equity for an injunction and an account. The defendants have demurred to the bill. The grounds of demurrer relied upon are the special ground that the allegations of the bill are insufficient for want of certainty, and the general ground that the bill does not state a case which entitles the complainant to relief in equity. The material allegations of the bill may be summarized as follows:

The complainant is the exclusive owner of certain secret formulas for making proprietary medicines, and is extensively engaged in the manufacture of these medicines. It sells these medicines to wholesale and retail druggists on what is known as the direct contract plan. Under this system of agency contracts, the medicines are sold to jobbers, retailers, and consumers at fixed and uniform prices, and the jobbers agree to sell only to retailers who have executed contracts, and these retailers agree to sell only to purchasers for consumption. The medicines are put up in various original and distinctive cartons and bottles, bearing certain labels, trade-marks, and trade-names. As a means of identifying each package, serial numbers are stamped upon the carton.

All druggists are given full opportunity of signing these contracts and of obtaining these articles at fixed and uniform prices. These contracts are in force between the complainant and nearly all the wholesale druggists of the country and over 40,000 retail druggists. The purpose of the system is to prevent secret rebates, discrimination, price-

cutting, demoralization of trade, and injury to the reputation and good will of the complainant's business.

The defendants are wholesale and retail druggists, having stores in various places in the city of Boston. Refusing the opportunity offered them to execute these contracts, the bill charges that the defendants have combined and conspired with complainant's agents, and that they have adopted a system of illegally and fraudulently obtaining these medicines. The methods employed consist in inducing retail dealers to execute contracts for the purpose of procuring these medicines from jobbers, and then turning over the medicines so procured to the defendants; in procuring contracts from retailers, and persuading jobbers to sell complainant's medicines, ostensibly to such retailers, but in reality to defendants; in persuading and inducing retail druggists under contract with the complainant to supply these medicines to defendants in violation of such contracts, or by deceiving such retailers into sales by fraudulently stating that the purchases are for consumption, and not for resale. The defendants, it is alleged, offer for sale and sell the medicines so obtained at cut rates, thereby demoralizing prices, depleting trade, and causing irreparable injury to the complainant. The defendants further employ the complainant's medicines as a means of attracting customers, and then substituting and selling other remedies, thus inducing such customers to abandon their original intention of purchasing the complainant's medicines. In case of the sale of complainant's medicines, the defendants mutilate, obliterate, or cover up the trade-marks, trade-names, and serial numbers upon the packages or cartons.

The bill prays that the defendants may be enjoined from persuading persons who have entered into contracts with the complainant from breaking their contracts by selling and delivering to the defendants the complainant's medicines, and from procuring from any retail druggist the execution of contracts with the complainant, and from passing themselves off to any jobber under contract with the complainant as representing a retail druggist who has executed a proper contract, and from procuring in any way the complainant's remedies from any wholesale or retail dealer who has entered into contracts with the complainant in violation of those contracts, and from mutilating or defacing the complainant's packages, or changing its cartons or labels, and for other relief.

The theory upon which this bill is framed is clear. The complainant's medicines are only sold to wholesale and retail druggists under direct contracts with the complainant. The complainant finds that the defendants are selling its medicines at cut rates in mutilated packages. The bill charges the defendants with having obtained these medicines by unlawfully combining with, persuading, or deceiving, the agents of the complainant to break their contracts, and thus obtaining these medicines illegally and in violation of these contracts, and the bill seeks to enjoin the defendants from pursuing this course of conduct.

The bill contains a sufficiently clear statement of all the material facts to enable the defendants to make the proper defense thereto. It is probably impossible for the complainant to make the allegations more specific by naming the particular druggists with whom the defendants

have combined and conspired, since it appears from the bill that the defendants obliterate the identifying serial numbers upon the packages they sell. By this means the complainant is prevented from ascertaining the jobber or retailer to whom the package was originally sold. The bill, however, does set forth with great fullness the title and rights of the complainant and the violation of those rights. It alleges, in various forms and with sufficient definiteness, the substantial facts of collusion, combination, and persuasion by the defendants with wholesale and retail druggists who are under contract with the complainant. It is a course of conduct which the bill seeks to enjoin, rather than any particular act. The rules of certainty do not require any more specific statements in bills of this character. Swift & Co. v. United States, 196 U. S. 375, 400, 25 Sup. Ct. 276, 49 L. Ed. 518; United States v. Bell Telephone Co., 128 U. S. 315, 356, 9 Sup. Ct. 90, 32 L. Ed. 450.

The remaining and more important question is whether the bill states a case for relief in equity. If the complainant's system of contracts is lawful, it is clear that the allegations of the bill are sufficient, for the bill charges the defendants with unlawfully combining with and persuading the complainant's agents to break their contracts, and thereby obtaining complainant's medicines in violation of those contracts, and this is a familiar and well-settled ground of equitable relief. Wells & Richardson Co. v. Abraham (C. C.) 146 Fed. 190; Dr. Miles Medical Co. v. Platt (C. C.) 142 Fed. 606; Angle v. Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Garst v. Charles, 187 Mass. 144, 72 N. E. 839; American Law Book Co. v. Thompson Co. (Sup.) 84 N. Y. Supp. 225; Board of Trade v. Christie, 198 U. S. 236, 251, 25 Sup. Ct. 637, 49 L. Ed. 1031; Exchange Telegraph Co. v. Gregory, L. R. 1 Q. B. D. (1896) 147; Sperry & Hutchinson Co. v. Mechanics' Clothing Co. (C. C.) 128 Fed. 800. See, also, Heath v. American Book Co. (C. C.) 97 Fed. 533; Walker v. Cronin, 107 Mass. 555; Moran v. Dunphy, 177 Mass. 485, 59 N. E. 125, 52 L. R. A. 115, 83 Am. St. Rep. 289; Lumley v. Gye, 2 El. & Bl. 216; Bowen v. Hall, 6 Q. B. D. 333.

It only remains to inquire whether the system of contracts set out in the bill is lawful. It is to this point that the arguments and briefs of counsel have been largely addressed. The contention of the defendants is that these contracts are unlawful because they are in restraint of trade. In support of this position they do not rely so much upon the common-law rule as upon the federal statute. Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200].

The bill alleges that the complainant is the exclusive owner of these secret formulas, and the exclusive manufacturer of these remedies. It follows that, until voluntary disclosure or lawful discovery, the complainant has an exclusive property in these trade secrets, and has the exclusive right to make, use, and vend the articles made thereunder. The exclusive right of property in a trade secret is, of necessity, a monopoly, the same as a patent or a copyright. The complainant may make these articles, or refrain from making them. It may sell them, or refrain from selling them. It may sell them to one person, and not to another, and at such prices and upon such conditions as it may deem most advantageous. Contracts like those set out in the bill concerning

articles made under trade secrets, the same as similar contracts concerning articles made under a patent or a copyright, are outside the rule of restraint of trade, whether at common law or under the federal statute. Hartman v. Park (C. C.) 145 Fed. 358; Dr. Miles Medical Co. v. Platt (C. C.) 142 Fed. 606; Wells & Richardson Co. v. Abraham (C. C.) 146 Fed. 190; Dr. Miles Medical Co. v. Goldwaite (C. C.) 133 Fed. 794; Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058; Board of Trade v. Christie, 198 U. S. 236, 252, 25 Sup. Ct. 637, 49 L. Ed. 1031; Garst v. Harris, 177 Mass. 72, 74, 58 N. E. 174; Fowle v. Park, 131 U. S. 88, 97, 9 Sup. Ct. 658, 33 L. Ed. 67; Park & Sons Co. v. National Wholesale Druggists' Ass'n, 175 N. Y. 1, 67 N. E. 136, 62 L. R. A. 632, 96 Am. St. Rep. 578; Standard Fireproofing Co. v. St. Louis Co., 177 Mo. 559, 76 S. W. 1008; Victor Co. v. The Fair, 123 Fed. 424, 61 C. C. A. 58; Heaton-Peninsular Co. v. Eureka Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728; Central Shade Co. v. Cushman, 143 Mass. 353, 9 N. E. 629; Good v. Daland, 121 N. Y. 1, 24 N. E. 15.

Demurrer overruled.