UNITED STATES of America,
Plaintiff,

v.

SOCONY MOBIL OIL COMPANY, Inc.,
Defendant (five cases).

Cr. A. Nos. 56–152—56–156.

United States District Court
D. Massachusetts.

March 20, 1957.

Stanley N. Barnes, Asst. Atty. Gen., Worth Rowley, Boston, Mass., Richard B. O'Donnell, New York City, Anthony Julian, U. S. Atty., John J. Galgay, Boston, Mass., Ralph S. Goodman, Philip Bloom, Joseph T. Maioriello, New York City, for plaintiff.

John L. Hall, Conrad W. Oberdorfer, Boston, Mass., for defendants.

SWEENEY, Chief Judge.

There are before me five indictments which charge the defendant with violation of the Sherman Act, 15 U.S.C.A. § 1, which is entitled "An Act to protect trade and commerce against unlawful restraints and monopolies." In the various indictments it is alleged that the defendant through devious devices such as discounts, rebates, and abatement of rents to the dealers who traded in its product fixed the price of retail gasoline that was to be sold by the dealers to the public and still allowed the dealer a fair margin of profit. As a typical example, the defendant agreed with one Cail who was referred to in the 6th count of indictment 56–154 to allow him a rebate of 3.7¢ per gallon provided that he would sell his regular gasoline at 22.9¢ a gallon and his special gasoline for 25.9¢ per gallon. Whether the inducement was in the form of a rebate or a reduction in the purchasing price or an abatement of rent on property owned by the defendant and leased by the dealer is inconsequential for they were all inducements to persuade the dealer to sell his gasoline at a price that would meet the competition of dealers in other brands of gasoline. Right here it is important to note the government's argument that the arrangement was made possible and flowed from the maintenance of a tank wagon price by the defendant which was high, arbitrary, and non-competitive. The maintenance of a high tank wagon price may have been the result of the action on the part of the defendant and its dealers, but it could hardly be called a basis for the arrangements referred to. It was the apparent and real purpose of the defendant who was the wholesaler of the gasoline to allow its gasoline to be sold in a market where it could meet the competition of dealers in other brands of gasoline. Indictment 56–156 alleges an agreement between the defendant and two dealers, Frederick Abaid and Anthony Inglese, under which the dealers were charged with the duty, not of maintaining their retail price at a particular mathematical level, but rather to meet the competition of a competing retailer, known as Bell's Service Station.

The defendant insists that the operations of the defendant are taken out of the Sherman Act, supra, by reason of the McGuire Act, 15 U.S.C.A. § 45, which provides in substance that "any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others" shall not be unlawful under the Antitrust Acts "when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy" in effect in the state involved. The government contends that gasoline stored in a tank, which is buried underground at the filling station and from which a pipe conveys the stored gasoline to a pump which has a label designating the brand or name of the producer or distributor, is not a container bearing a trade-mark within the meaning of the McGuire Act. In short it alleges that the tank which contains the gasoline prior to being pumped is not a container. I cannot follow this reasoning and find as a matter

of fact and law that such a tank which provides a continuous flow of gasoline to the pump when needed where the pump bears the label of the producer or distributor is a container within the meaning of the McGuire Act.

██ The next argument advanced by the government is that the McGuire Act refers only to "fair trade" contracts and that as the defendant, during the major portion of the time charged in the indictment, was not subject to fair trade agreements, it was outside the terms of the McGuire Act. This defendant had fair trade agreements with its dealers early in 1940 for a period of about 16 weeks after the passage of the Massachusetts statute of May 19, 1939, St. 1939, c. 231, Mass.General Laws (Ter. Ed.) Chapter 93, § 14A, which included the vending equipment clause specifically, in what was felt to be a necessary amendment to cover gasoline pumps. At the end of 16 weeks of fair trading in 1940, the defendant ceased fair trading and did not resume it until August 8, 1956, which was some five or six weeks after these indictments were returned. I can find nothing in the McGuire Act which limits its exemptions to fair trade agreements. Had Congress intended to so limit this Act, it certainly could have used simple and appropriate words to indicate its intent. The language of the Act is clear of ambiguities, and I see no reason for referring to Congressional debates or expressions of intents or understandings on the part of individuals, prior to the adoption of the Act.

██ Conforming the facts in this case to the McGuire Act, I find that the indictments allege contracts for the sale of commodities at a stipulated price and that the container of the commodity bore the trade-mark of the producer and that the defendant's gasoline was in fair and open competition with commodities of the same general class. The court takes judicial notice of this latter fact.

██ The only question remaining to be determined is the effect of Massachusetts law upon such agreements. The Supreme Judicial Court of Massachusetts has consistently held that a wholesaler or distributor had an absolute right to dictate the terms of resale. In Garst v. Harris, 177 Mass. 72, 58 N.E. 174, decided in 1900, the court allowed a recovery for breach of the retailer's agreement not to sell below the price stipulated by the distributor. This doctrine was reaffirmed, Garst v. Hall & Lyon Co., 179 Mass. 588, 61 N.E. 219, 55 L.R.A. 631, in 1901, although relief in that case was denied because it was against a third party and "fair trade" legislation which was needed for such recovery was not available. The most recent case which has reaffirmed a long series of cases involving the point is General Electric Co. v. Kimball Jewelers, Inc., 333 Mass. 665, 132 N.E.2d 652, 658. The court in upholding the Massachusetts Fair Trade Law held that "The producer of a trade marked article which is of a class in open competition may fix the price at which the retailer may sell," citing Garst v. Harris, supra, Garst v. Charles, 187 Mass. 144, 72 N.E. 839, Associated Perfumers, Inc., v. Andelman, 316 Mass. 176, 55 N.E.2d 209.

Mass.General Laws (Ter.Ed.) Chapter 93, § 14A, states as follows:

"No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, or the vending equipment from which said commodity is sold to consumers bears, the trademark, brand or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the commonwealth by reason of any of the following provisions which may be contained in such contract:

" * * * That the buyer will not resell such commodity except at the price stipulated by the vendor. * * *"

This enactment is, in effect, a statutory recognition of a long established public

policy and common law principle on the part of the Commonwealth.

On the basis of the above findings, I rule as a matter of law that the indictments herein do not charge an offense under the Sherman Act, and the indictments, therefore, are to be dismissed.